**MISSOURI PROPERTY & CASUALTY INSURANCE GUARANTY ASSOCIA- TION, Respondent/Cross–Appellant,**

v.

**POTT INDUSTRIES, et al., Appellants/Cross– Respondents.**

**No. 80516.**

Supreme Court of Missouri, En Banc.

June 16, 1998.

W. Stanley Walch, Mark Sableman, Mike W. Bartolacci, Norbert Glassl, St. Louis, for Respondent61Cross–Appellant.

Adrian P. Sulser, Gerre S. Langton, Mary Anne Lindsey, St. Louis, for Appellants/Cross–Respondents.

HOLSTEIN, Judge.

Missouri Property and Casualty Insurance Guaranty Association (MIGA) and Pott Industries both appeal from a summary judgment in a declaratory judgment action and counterclaim for damages. The trial court concluded that Pott was entitled to a judgment as requested for attorney's fees incurred in defense of certain workers' compensation and liability claims. However, it denied Pott's claims to (1) prejudgment interest on amounts it expended to defend or settle the claims; (2) expenses incurred to establish MIGA's coverage of claims against Pott; and (3) damages for vexatious refusal to defend or reimburse Pott. Following opinion by the Missouri Court of Appeals, this Court granted transfer. *Mo. Const. art. V, sec. 10.* The judgment is affirmed in part and reversed in part.

## I.

Pott was insured under various policies with Midland Insurance Company (Midland) until April 3, 1986, on which date Midland was declared insolvent. Before its insolvency, Midland was a member of MIGA, an incorporated legal entity created by the legislature to protect the public from insolvent insurers. *See sec. 375.785.*[1]

In early 1989, twenty-five Pott employees filed workers' compensation claims against Pott for injuries that occurred in the course of their employment with Pott. In response to those claims, Pott filed claims with Midland's liquidator. Pott also requested that MIGA provide Pott with defense and indemnification. MIGA originally assumed liability for those claims. However, it then denied any obligation to provide a defense or indemnify Pott with respect to the workers' compensation claims.

MIGA initiated the present suit, in which it sought a declaratory judgment to determine its coverage obligation with respect to the claims. However, the trial court stayed the declaratory judgment action pending a final determination of the issues in the workers' compensation proceedings. On two occasions, the workers' compensation litigation

---

1. All references to statutes are to RSMo Supp. 1985, unless otherwise noted.

reached the appellate courts. *See Mikel v. Pott Industries* (Mikel I), 896 S.W.2d 624 (Mo. banc 1995), and *Mikel v. Pott Industries* (Mikel II), 910 S.W.2d 323 (Mo.App.E.D. 1995).

In the course of litigating *Mikel I* and *Mikel II*, Pott settled all of the original workers' compensation claims. Pott then filed a counterclaim in which it alleged eight counts against MIGA. Pott demanded that MIGA indemnify Pott under Midland's policies for the twenty-five workers' compensation claims, two more workers' compensation claims, and several liability claims. Pott also claimed that it was entitled to all attorney's fees incurred in defense of the workers' compensation claims as well as prejudgment interest on all of its expenditures involved in defending the suit and covering the claims. The respective cost of the parties regarding the claims is as follows:

|  | Settlement Costs Pott Incurred | Settlement Costs MIGA Reimbursed | Defense Costs Pott Incurred | Defense Costs MIGA Reimbursed |
|---|---|---|---|---|
| Original Workers' Comp. Claims | $138,036.80 | $135,336.88 | $263,360.45 | $148,915.93 |
| Subsequent Workers' Comp. | 0 | 0 | $2,323.50 | $2,123.50 |
| Additional Liability Claims | 0 | 0 | $2,565.52 | $2,465.52 |

Pott further claimed that it was entitled to the costs associated with establishing MIGA's liability in *Mikel I* and *Mikel II*. Finally, Pott contended that MIGA vexatiously refused to pay the workers' compensation and property damage claims. The trial court disposed of all claims through summary judgment. The court granted judgment in favor of Pott and the twenty-five claimants on MIGA's declaratory judgment action. The court granted Pott all attorney's fees Pott incurred defending all of the claims. The court denied Pott's request for prejudgment interest and for its costs incurred in establishing coverage. Finally, the court dismissed Pott's claim for vexatious refusal to pay. MIGA and Pott both appeal.

### II.

■ MIGA argues that the trial court erred in granting Pott its attorney's fees incurred in defending the underlying workers' compensation claims. The relevant statute, sec. 375.785, provides in part:

. . . .

3. As used in this section:

. . . .

"Covered claim" means an unpaid claim including those for unearned premiums, . . . which arise out of and is within the coverage of an insurance policy to which this section applied issued by a member insurer, . . . .

(1) [MIGA] shall:

Be obligated to the extent of the covered claims existing prior to the date of entry of a decree or judgment pursuant to section 375.560 . . . but such obligation shall include only that amount of each covered claim which is in excess of one hundred dollars and is less than fifty thousand dollars. In no event shall [MIGA] be obligated to a policyholder or claimant in an amount in excess of the face amount of the policy from which the claim arises . . . Be deemed the insurer to the extent of its obligations on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.

MIGA does not argue that no attorney's fees can be awarded under this statute. Instead, MIGA argues that any award must be included under the $49,900 cap on "covered claims."

■ In interpreting this statute, this Court must first determine the intent of the legislature by considering the plain and ordinary meaning of the words used in the statute. *Hadlock v. Director of Revenue,* 860

S.W.2d 335, 337 (Mo. banc 1993). In addition, each word, clause, sentence and section of a statute should be given meaning. *Id.*

■ Only covered claims are subject to the statutory cap. The statute defines a covered claim as an "unpaid claim ... which arise[s] out of and is within the coverage of an insurance policy to which this section applies." Here the unpaid claims are those of the injured workers and liability claimants. Mounting a defense against these claims is not an unpaid claim. Subsection .4(1)(b) places MIGA in the place of the insolvent insurer to the extent of unpaid claims **and** "to such extent shall have all rights, duties, and obligations of the insolvent insurer." MIGA argues that it only assumes the "rights, duties, and obligations" of the insolvent members "to such extent" of its obligations to pay covered claims. However, to give effect to the "rights, duties, and obligations" provision, the legislature must have meant something more than paying "covered claims." From the language used, the legislature intended that obligations falling outside the definition of a "covered claim" would not be subject to the statutory cap. Midland would have been obligated to defend the underlying claims if it "had not become insolvent." Therefore, MIGA assumes the obligation to defend the covered claims. Defending the claims necessarily involves the cost of employing attorneys. The duty to defend claims is not subject to the cap provided for in subsection .4(1)(a).

MIGA relies on the phrase "to such extent" as a limitation on its "rights, duties, and obligations" to pay costs of defense. However, a more reasonable reading of the phrase is that it allows MIGA to excuse itself from any further "rights, duties, and obligations" of the insolvent insurer by either settling a covered claim within the statutory cap or paying that amount to the claimant.

MIGA argues that the legislature did not intend to create substitute insurance in order to make the insured whole. It is true that the legislature did not intend for MIGA to make every covered claimant whole because it imposed a cap on each claim. Yet the legislature distinctly provided that MIGA would assume limited liability to each claim-ant under the included policy and that MIGA would assume the rights, duties, and obligations of insolvent members. MIGA argues that this will result in potentially unlimited defense costs. However, the legislature placed no cost limitation on the duty to defend against covered claims. This Court will not write such a provision into the statute. To protect itself, MIGA can control the cost of defense simply by undertaking the defense of covered claims. The judgment awarding $114,744.52 in attorney's fees is affirmed.

### III.

■ The trial court found that Pott was not entitled to any prejudgment interest. On appeal, Pott argues that sec. 408.020, RSMo 1994, the interest statute, and the Guaranty Act do not exempt MIGA from paying prejudgment interest. Pott's argument is that Midland is obligated to pay prejudgment interest. Therefore, MIGA is also obliged.

MIGA contends that the interest statute does not apply because its liability arises under the Guaranty Act, not under the Midland policies, and that the Guaranty Act does not authorize the payment of any prejudgment interest. MIGA essentially adopts the position of the Court of Appeals, Eastern District, which held that "[t]here is no provision in the [Guaranty Act] which would allow the awarding of interest and the award of interest did not arise directly from the insurance policy or from the insurer or MIGA's obligations or duties under the policy." *Hankins Const. v. MIGA*, 724 S.W.2d 583, 591 (Mo.App.1986).

■ The argument is simply incorrect. As stated above, MIGA is liable for "covered claims" of the insolvent insurer and, in addition, assumes the "rights, duties, and obligations" of the insolvent insurer. *Sec. 375.785.4(1)*. If Midland had not been insolvent, it would be liable for prejudgment interest as an incident to its duty to pay "covered claims" under its policies. Therefore, MIGA owes prejudgment interest on covered claims, just as Midland would. The only limitation on the liability is the $49,900 cap. Thus, the interest on the amount actually paid out for each covered claim and the

interest on each claim is subject to the statutory cap of $49,900. Prejudgment interest on attorney's fees and costs are not subject to the same cap.

The trial court's judgment that Pott was not entitled to any prejudgment interest is reversed. The record does not state the amount paid on each individual claim. Therefore, the cause is remanded to the trial court to determine the amount paid for each covered claim and to ensure that the principal plus prejudgment interest does not exceed $49,900. To the extent that *Hankins Const.* is inconsistent with this holding, it is overruled.

## IV.

◼ Pott claims the trial court erred in holding that Pott is not entitled to recover its attorney's fees and other costs incurred establishing MIGA's responsibility for covered claims. The general rule is that "absent statutory authorization or contractual agreement, with few exceptions, each litigant must bear his attorney's fees." *David Ranken, Jr. Technical Institute v. Boykins*, 816 S.W.2d 189, 193 (Mo. banc 1991). The few exceptions are limited to "those cases involving 'very unusual circumstances' or where the natural and proximate result of a breach of duty is to involve the wronged party in collateral litigation." *Id.* (quoting *Johnson v. Mercantile Trust Co. National Assoc.*, 510 S.W.2d 33, 40 (Mo.1974)). Pott claims it is entitled to its attorney's fees under the "collateral litigation" exception as articulated in *Forsythe v. Starnes*, 554 S.W.2d 100, 111 (Mo.App.1977). *Forsythe* merely restated the test from *Johnson* and stated that if the parties could show the required elements on retrial, then attorney's fees should be awarded.

*Johnson* stated that when "the natural and proximate result of a wrong or breach of duty is to involve the wronged party in collateral litigation, reasonable attorney's fees necessarily and in good faith incurred in protecting himself from the injurious consequence thereof are proper items of damages." *Johnson*, 510 S.W.2d at 40. Without question, MIGA breached its duty to defend the workers' compensation claims. Pott's pursuit of MIGA for that breach was not collat-

eral litigation. The collateral litigation, if any, was Pott's defense of the workers' compensation claims that should have been attended to by MIGA. Pott has been allowed its attorneys' fees for that litigation. The trial court judgment denying Pott its attorney's fees incurred establishing MIGA's obligation to pay the workers' compensation claims is affirmed.

## V.

◼ Finally, Pott appeals the trial court's dismissal of its claim alleging vexatious refusal to pay. Section 375.420, RSMo 1986, establishes a vexatious refusal to pay claim against "any insurance company" that unreasonably refuses to pay a claim. Though MIGA assumes certain "rights, duties, and obligations" of an insolvent insurer, it is a "nonprofit unincorporated legal entity," not an insurance company. *Sec. 375.785.1. See also Pannell v. MIGA*, 595 S.W.2d 339, 352 (Mo.App.1980).

Furthermore, sec. 375.785.14 states, "There shall be no liability on the part of and no cause of action of any nature shall arise against [MIGA] for any action taken by them in performance of their powers and duties under this section." This subsection does not shield MIGA from its liability for "covered claims" or other "duties and obligations" of insolvent members. Even though MIGA assumed a duty to not unreasonably withhold payment, the above subsection shields MIGA from a cause of action resulting from its activity. Pott's vexatious refusal to pay claim is based on MIGA's actions, not Midland's. The trial court's dismissal of the Pott claim for vexatious refusal to pay is affirmed.

## CONCLUSION

The judgment of the trial court is affirmed except for that portion relating to the award of prejudgment interest. The judgment denying prejudgment interest is reversed, and the cause is remanded for further proceedings consistent with this opinion.

All concur.