PIERCE, Justice,
for the Court:
¶ 1. Three death-row inmates, Robert Simon, Rodney Gray, and Benny Stevens, along with the groups, Mississippians Educating for Smart Justice and Mississippi CURE, Inc. (collectively, the petitioners) filed a complaint in the Hinds County Circuit Court, seeking a writ of mandamus, injunctive relief, and/or a declaratory judgment against the Mississippi Department of Corrections (MDOC).[1] The complaint alleged that the MDOC’s newly-adopted execution protocol was invalid pursuant to Mississippi Administrative Procedures Law (MAPL) because the MDOC had adopted a new rule with regard to the MDOC’s lethal-injection protocol without first meeting the notice-and-comment requirements set forth by the MAPL. The circuit court denied relief, finding that the MDOC’s lethal injection protocol is exempted from the MAPL because the MAPL specifically excludes matters “directly related to inmates.” We affirm the circuit court’s judgment.
DISCUSSION
¶ 2. Executions are governed by Mississippi Code Sections 99-19-51 through 99-19-61 (Rev.2007). Section 99-19-51 states:
The manner of inflicting the punishment of death shall be by continuous intravenous administration of a lethal quantity of an ultra short-acting barbiturate or other similar drug in combination with a chemical paralytic agent until death is pronounced by the county coroner where the execution takes place or by a licensed physician according to accepted standards of medical practice.
Pursuant to Section 99-19-58, the state executioner or duly authorized representative shall inflict the punishment of death, and all duties and necessary acts pertaining to the execution shall be performed by the commissioner of corrections, except where such duties and actions are vested in the state executioner.
¶ 3. Prior to March 2011, the execution protocol implemented by the commissioner for carrying out the method of death prescribed by Section 99-19-51 had called for injection of three drugs: (1) sodium pento-thal (also known as sodium thiopental), an anesthetic; (2) pavulon (also known as pancuroniam bromide), a paralytic agent; and (8) potassium chloride, which stops the heart. In 2009, Hospira, Inc., the sole United States manufacturer of the drug sodium thiopental, announced that it planned to stop producing sodium thiopen-tal, because the company did not want the drug used in executions. A nationwide shortage of the drug ensued, and a number of states began substituting pentobarbital for sodium thiopental in their respective states execution protocol. See e.g. Jackson v. Danberg, 656 F.3d 157, 160 (3rd Cir.2011) (noting that “[d]ue to a nationwide shortage of sodium thiopental, Delaware, along with a number of other states, revised its protocol to allow for the use of an alternative barbiturate, pentobarbital”); see also Valle v. Singer, 655 F.3d 1223, 1229 n. 5 (11th Cir.2011) (noting Florida’s recent replacement, along with Georgia and Alabama).
¶ 4. On March 29, 2011, the MDOC issued a revised execution protocol, allowing the use of pentobarbital, “[i]n the event of an unavailability of a sufficient quantity of sodium pentothal from available sources.... ” The petitioners thereafter *461 filed a complaint in the circuit court in April 2011, claiming that this revision to the MDOC’s execution protocol constituted an invalid rule change under Mississippi Code Section 25-43-8.111 (Rev.2010), which states, in part: “A rule adopted after July 1, 2005, is invalid unless adopted in substantial compliance with the provisions of Sections 25-43-3.102 through 25-43-3.110.” The circuit court denied relief based on the finding that the MDOC’s execution protocol does not constitute a “rule” under the MAPL. The circuit court noted that the MAPL defines a “rule” as: the whole or a part of an agency regulation or other statement of general applicability that implements, interprets, or prescribes law or policy. See Miss.Code Ann. § 25-43 — 1.102(i)(i) (Rev.2010). And the court found that the MAPL specifically exempted from the definition of a rule any regulation “directly related only to inmates of a correctional or detention facility, students enrolled in an educational institution or patients admitted to a hospital, if adopted by that facility, institution, or hospital.” Miss.Code Ann. § 25-43-1.102(i)(ii)(6) (Rev.2010).
¶ 5. The petitioners argue on appeal that the circuit court erroneously held that the MDOC’s execution protocol qualifies for the MAPL’s exemption for rules. They contend the circuit court gave an overly broad reading of the statute, which, the petitioners maintain, is narrowly drawn and, by its plain terms, applies only to agency rules that satisfy two criteria: The rule (1) must directly relate only to inmates and (2) must have been adopted by an individual correctional facility. According to the petitioners, the MDOC’s execution protocol relates to far more persons than inmates alone, as it governs the conduct of twenty-nine categories of MDOC personnel, outside witnesses to the execution, and even members of the media. They further contend that the execution protocol is an agency-wide policy, promulgated by the MDOC itself, not by a specific prison facility in Mississippi.
¶ 6. This Court reviews questions of statutory interpretation de novo. Our duty is “to neither broaden nor restrict the legislative act” when passing upon such questions. Miss. Dep’t of Transp. v. Allred, 928 So.2d 152, 156 (Miss.2006). We held in Green v. Cleary Water, Sewer & Fire Dist., 910 So.2d 1022, 1027 (Miss.2005), that “courts cannot restrict or enlarge the meaning of an unambiguous statute.” And we reiterated in Allred:
[When] considering a statute passed by the Legislature, ... the first question a court should decide is whether the statute is ambiguous. If it is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction. [Citations omitted]. Whether the statute is ambiguous or not, the ultimate goal of this Court is to discern and give effect to the legislative intent.
Allred, 928 So.2d at 154 (quoting City of Natchez v. Sullivan, 612 So.2d 1087, 1089 (Miss.1992)).
¶ 7. As the State points out, the claim before us is not a novel one. A similar question was presented to the Missouri Supreme Court in Middleton v. Missouri Department of Corrections, 278 S.W.3d 193, 195 (Mo.2009). There, the Missouri Supreme Court was asked to declare whether the Missouri Department of Corrections’ newly adopted execution protocol was void because the department had failed to undertake notice-and-comment rulemaking as outlined by the Missouri Administrative Procedures Act (MAPA). Id. at 195. Similar to the exemption provision found in the MAPL, the MAPA provides that a “rule” does not include any *462 “statement concerning only inmates of an institution under the control of the department of corrections....” Id. In finding that the execution protocol was not subject to the rulemaking requirements of the MAPA, the Missouri Supreme Court held that the Missouri Legislature intended for the language, “concerning only inmates,” to simply “limit who may be the direct subject of a protocol or statement.” Id. at 196. The Middleton Court reasoned as follows:
Indeed, in some sense, nearly every aspect of prison life involves people from outside the prison system, such as cafeteria food made with ingredients from outside sources, specialized hospital care, and interagency transportation. The protocol in this case concerns the technical procedure that guides medical personnel who are members of an “execution team” in preparing chemicals for lethal injection and in supervising their administration. The medical professionals are serving a technical role. Beyond the fact that their skills are needed to carry out the technical provisions effectively, this is not a protocol that is concerned with directing the behavior of medical professionals, whose role is incidental.

Id.

¶ 8. We agree with the Missouri Supreme Court’s rationale. Here, the fact that the execution protocol contains provisions pertaining to individuals other than a condemned inmate does not lead us to a conclusion that the drug protocol falls within the strictures of the MAPL. Indeed, no serious contention can be made that the MDOC’s drug protocol falls outside Section 25 — 43—1.102(i) (ii) (6), as every intricate detail of the protocol applies directly to death-row inmates under any ordinary meaning of the exemption language set forth by that section.
¶ 9. As mentioned, “[a]ll duties and necessary acts pertaining to the execution of a convict shall be performed by the commissioner of corrections.... ” Miss.Code Ann. § 99-19-53 (Rev.2007). Section 99-19-55 specifies, in part that the commissioner:
shall secure the presence at such execution of the sheriff, or his deputy, of the county of conviction, at least one (1) but not more than two (2) physicians or the county coroner where the execution takes place, and bona fide members of the press, not to exceed eight (8) in number, and at the request of the condemned, such ministers of the gospel, not exceeding two (2), as said condemned person shall name. The Commissioner of Corrections shall also name to be present at the execution such officers or guards as may be deemed by him to be necessary to insure proper security. No other persons shall be permitted to witness the execution, except the commissioner may permit two (2) members of the condemned person’s immediate family as witnesses, if they so request and two (2) members of the victim’s immediate family as witnesses, if they so request. Provided further, that the Governor may, for good cause shown, permit two (2) additional persons of good and reputable character to witness an execution. No person shall be allowed to take photographs or other recordings of any type during the execution. The absence of the sheriff, or deputy, after due notice to attend, shall not delay the execution.
Miss.Code Ann. § 99-19-55 (Rev.2007). The section also provides that the execution shall take place at 6:00 p.m., or as soon as possible thereafter within the next twenty-four hours, at an appropriate place designated by the commissioner on the premises of the state penitentiary at Parchman, Mississippi. The execution *463 protocol at issue applies specifically to the facility at Parehman, and it does not affect any provision of Section 99-19-55 or alter Section 99-19-51.
¶ 10. Accordingly, we find that the MDOC execution protocol is a “regulation or statement” related only to inmates of the MDOC and is therefore exempt from the provisions of the MAPL. The protocol is an internal policy concerning lethal injections and the manner in which executions are carried out and is therefore not subject to the notice and comment requirements of the MAPL. Thus, this Court affirms the circuit court’s judgment.
CONCLUSION
¶ 11. The circuit court’s denial of the petitioners’ complaint for a declaratory judgment, writ of mandamus, and injunction is affirmed.
¶ 12. AFFIRMED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND KING, JJ., CONCUR.

. Two of the appellants are deceased: Stevens was executed by the Mississippi Department of Corrections on May 10, 2011, and Gray was executed on May 17, 2011.