**Kelly Jeanine KIRKPATRICK,
Claimant–Respondent,**

v.

**MISSOURI STATE TREASURER AS CUSTODIAN OF the SECOND INJURY FUND, Respondent–Appellant.**

**No. SD 31983.**

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 20, 2012.

Motion for Rehearing and Transfer
Denied Jan. 9, 2013.

Application for Transfer to Supreme
Court Denied Feb. 26, 2013.

Rochelle Leilani Phillip Reeves, Jefferson City, MO, for Appellant.

David M. Edwards, Cape Girardeau, MO, for Respondent.

## DON E. BURRELL, J.

The Treasurer of the State of Missouri, as Custodian for the Second Injury Fund ("Fund"), appeals an award of the Labor and Industrial Relations Commission ("the Commission") granting Kelly Jeanine Kirkpatrick ("Claimant") Fund benefits based on the synergistic combination of her pre-existing disabilities and her occupational disease. Fund's single point on appeal asserts that the Commission misapplied the law in awarding Claimant such benefits "because occupational disease claims are not compensable injuries triggering [Fund's] liability[.]" Finding no merit in the claim, we affirm.

### Facts and Procedural Background

In 2008, Claimant was diagnosed with carpal tunnel syndrome affecting both hands while working as a seamstress in a hat factory.[1] Her duties at that time involved stuffing and sewing the bills of hats. After undergoing treatment that included surgery on both hands, Claimant settled her worker's compensation claim against her employer ("Employer") based upon a disability of 16 percent for each wrist with a "10% load" with four weeks of disfigurement. Claimant returned to work for Employer after her surgeries, but her duties changed to adding brims and bindings while working on the "hat line."

Claimant then experienced worsening pain in her fingers, and her left elbow became painful. After other treatments did not resolve the issue, she had surgery on her elbow. Medical records received into evidence at the hearing before the Administrative Law Judge for the Division of Worker's Compensation ("the Division") indicated that Claimant's treating physician reported in August 2009 that "on [Claimant's] initial presentation, she did not have evidence of cubital tunnel syndrome, but this is something that has progressively developed over the past year." Additional tests followed, and Claimant's elbow surgery was performed in March 2010.

Claimant thought that the surgery helped because her fingers "didn't hurt as much[,]" but she continued to experience pain, and she limited some of her activities

---

1. Claimant began working as a seamstress in 1985 and had worked in that position for various apparel manufacturers.

as a result. Claimant testified that she did not return to work because Employer said "there was [a] lack of work" and "laid [her] off[.]" Claimant settled her worker's compensation claim relating to her elbow with Employer based on a 17.5 percent disability for her left elbow with four weeks of disfigurement. Dr. James Palen opined "that the combination of the two injuries, the carpal tunnel bilateral and the cubital tunnel syndrome was greater than the simple sum of the two individual injuries."

The Division determined that Claimant's cubital tunnel syndrome was a new "occupational disease which medically caused [Claimant's] injuries"; Claimant's permanent partial disability met the threshold requirements of section 287.220; the pre-existing wrist injuries and primary left elbow injury combined to "a greater overall disability than the simple sum" of the two injuries; "that a 15% loading factor is appropriate to quantify the synergistic effect of the limitations created" by both injuries; and that Fund was liable for the difference between the sum of the injuries and the enhanced disabling effect of the injuries in the amount of $2,511.03.[2] Upon its review, the Commission affirmed the Division's determination. In a supplemental opinion, the Commission also "construe[d] the term 'injury' as it appears in the phrase 'subsequent compensable injury' in [section] 287.220.1 to include occupational diseases." This appeal by Fund timely followed.

### Applicable Principles of Review

We must affirm the Commission's decision unless it "acted in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant making the award." *Clayton v. Langco Tool & Plastics, Inc.,* 221 S.W.3d 490, 491 (Mo.App. S.D.2007); section 287.495.1, RSMo 2000.[3] We review legal claims *de novo,* owing no deference to the Commission on its interpretation and application of the law. *Gervich v. Condaire, Inc.,* 370 S.W.3d 617, 620 (Mo. banc 2012).

In resolving a question of statutory construction, "[t]he primary rule ... is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). In ascertaining such intent, "it commonly is understood that each word, clause, sentence, and section of a statute should be given meaning." *Middleton v. Missouri Dept. of Corr.,* 278 S.W.3d 193, 196 (Mo. banc 2009).

### Analysis

Fund contends the Commission erred in awarding Claimant benefits from Fund "because occupational disease claims are not compensable injuries triggering [Fund's] liability in that the relevant workers' compensation statutes are to be strictly construed and only provide for Fund liability in the case of an 'injury.'" Fund argues that "[t]he plain language of [section] 287.220.1 requires an 'injury' and [section] 287.[020[4]] excludes 'occupational disease' from the definition of 'injury.' No

---

2. Fund raises no issue on appeal regarding the computation of the award.

3. Unless otherwise indicated, statutory references are to RSMo Cum.Supp.2011.

4. The brief actually references section 287.067. Based on the balance of Fund's argument, we believe this to be a typographical error.

provision of Chapter 287 'specifically provides' that 'injury' as used with regard to [Fund] includes occupational disease." [5]

There is no need to engage in an extensive analysis of Fund's argument as it was appropriately rejected as follows by the western district of our court in *Treasurer of State–Custodian of Second Injury Fund v. Stiers*, 388 S.W.3d 217, 220 (Mo.App. W.D.2012):

> The plain language of Section 287.220 states that a "compensable injury" triggers Second Injury Fund liability. Section 287.067.2 provides "An *injury* by occupational disease is *compensable* ..." (Emphasis added). An injury by occupational disease that meets Section 287.067's definition and requirements is a compensable injury under the Workers' Compensation Law. Therefore, an injury by occupational disease that is compensable under Section 287.067 constitutes a "compensable injury" triggering Second Injury Fund liability under Section 287.220.

*Cf. State ex rel. KCP & L Greater Missouri Operations Co. v. Cook*, 353 S.W.3d 14, 18 (Mo.App. W.D.2011) (en banc) (in limiting the exclusivity provision of 287.120 to injuries caused by accidents, the court observed that "[t]he Workers' Compensation Law distinguishes between two general categories of compensable injuries: (1) injuries by accident; and (2) injuries by occupational disease").

Fund's point is denied, and the final award of the Commission is affirmed.

JEFFREY W. BATES, J., and DANIEL E. SCOTT, P.J., concur.

**5.** Fund also argues in its brief that the Commission incorrectly applied section 287.067 to Fund when no provision of Chapter 287 " 'specifically provides' that 'injury' as used in [Fund] statute [sic] is to include occupational diseases" and that essentially "the Commission construed 'employer' to include [Fund]." It is not necessary to squeeze Fund into the definition of employer in order to understand the relevant terms. Section 287.067.1 begins "[i]n this chapter." As a result, it addresses occupational disease for purposes of the entire chapter; it is not limited to those sections applicable only to employers. In like manner, section 287.020.3 also provides the definition of "**injury**" for "this chapter"; it does not purport to have a different applicability for Fund than for employers. (Bold as in original.)