

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | *Opinion issued March 18, 2025* |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SC100652 |
| | ) | |
| BRIAN V. MILAZZO, | ) | |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF RANDOLPH COUNTY
The Honorable James Maurice Cooksey, Judge

Brian Milazzo appeals his conviction for the class A misdemeanor of interfering with an arrest on the basis of insufficient evidence. Because there was sufficient evidence Milazzo used physical interference to impede the arrest of a passenger in his vehicle by refusing to unlock the passenger-side door, this Court affirms the circuit court's judgment.

### Factual and Procedural Background

In March 2022, two Missouri State Highway Patrol officers ("Trooper" and "Corporal") were conducting a driver's license checkpoint in Randolph County. Milazzo came to the checkpoint driving a pickup truck with a passenger ("Passenger") in his front passenger seat. Milazzo told Trooper he did not have his driver's license with him but had

proof of insurance on his phone. Trooper asked Milazzo to pull over to the shoulder and park in front of Trooper's patrol vehicle so Milazzo could locate his proof of insurance. Milazzo complied and identified himself upon Trooper's request so Trooper could look up Milazzo's driver's license.

While speaking to Milazzo on the driver's side of the vehicle, Trooper noticed Passenger was not wearing his seatbelt, so he asked Passenger identification questions to issue him a seatbelt citation. Passenger did not respond to Trooper's questions and avoided eye contact. After Passenger continued to refuse to give Trooper his name, Trooper requested Corporal's assistance.

Corporal approached the passenger side of the vehicle and spoke to Passenger, but Passenger also refused to identify himself for Corporal. As a result, Corporal told Passenger he was under arrest because the officers could not otherwise issue the seatbelt citation without Passenger's name. When Corporal told Passenger to step out of the vehicle, Passenger refused. In response, Corporal instructed Milazzo multiple times to unlock the door and stated he would otherwise have to break the window to remove Passenger from the vehicle.[1]

---

[1] Videos taken from Trooper's dash camera and inside Corporal's patrol vehicle were admitted at trial, along with a video Milazzo recorded on his cellular phone. Not all the dialogue in the videos is comprehensible, but video captures Corporal stating, "you're under arrest for failing to wear a safety belt. If you don't unlock the door and open up, we're going to punch it out and take you out of the vehicle." Video also captures Corporal asking Milazzo, "do you want your window broken out, sir?" Milazzo contends neither officer asked Milazzo to unlock the passenger-side door; however, both officers testified Corporal instructed Milazzo to unlock the door multiple times.

2

Eventually, Corporal instructed Trooper to retrieve a window punch from his patrol vehicle. Corporal stated, "sir, I'm not going to warn you again. I will break your window, and I will drag him out of it." Neither Milazzo nor Passenger took any action. Consequently, Corporal broke the passenger-side window using the tool, reached through the window to unlock the door, removed Passenger from the vehicle, and placed Passenger under arrest. Once Passenger was secured in Trooper's patrol vehicle, Corporal placed Milazzo under arrest.

Milazzo was charged with interfering with an arrest. At trial, Milazzo testified his vehicle was already locked when he reached the checkpoint; the power locks inside his vehicle had not worked for two years prior to the incident; and the only way he could have unlocked the passenger-side door was by reaching across Passenger and manually turning the lock or opening the door. Milazzo also testified he did not tell the officers the power locks were broken. An investigator from the public defender's office who had inspected Milazzo's vehicle testified the vehicle automatically locks once the vehicle's speed reaches approximately 10 miles per hour and the vehicle remains locked when placed in park and turned off. Corporal and Trooper both testified at trial, and videos capturing the incident were admitted into evidence.

After the State rested, Milazzo filed a motion for judgment of acquittal, arguing the State failed to make a submissible case because it presented insufficient evidence to prove he used physical interference during Passenger's arrest. Specifically, Milazzo argued failing to unlock the passenger-side door did not constitute physical interference with an arrest. The circuit court overruled the motion. At the close of all evidence, Milazzo

3

renewed his motion for judgment of acquittal, which the circuit court again overruled. Ultimately, the jury found Milazzo guilty of interfering with an arrest. The circuit court sentenced Milazzo to 21 days in jail with credit for time served. Milazzo appealed, and, after opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

**Standard of Review**

The sole issue raised in this appeal is whether the circuit court erred in entering judgment and sentence against Milazzo because the State did not present sufficient evidence he interfered with Passenger's arrest. In determining whether evidence is sufficient to support a conviction, "the Court does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998) (internal citation and quotation omitted).

> [T]his Court does not weigh the evidence but rather accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignores all contrary evidences and inferences. The evidence is sufficient to support a conviction when there is sufficient evidence from which a reasonable fact-finder might have found the defendant guilty beyond a reasonable doubt. This Court may not supply missing evidence, or give the State the benefit of unreasonable, speculative or forced inferences.

*State v. Gilmore*, 537 S.W.3d 342, 344-45 (Mo. banc 2018) (alterations omitted) (internal citations and quotations omitted). Viewing the evidence presented at trial through this lens, the Court must determine whether the evidence is sufficient to support a finding that the resisting arrest statute has been violated. This requires interpreting the language of the

4

resisting arrest statute, which is a matter of law this Court reviews *de novo*. *Middleton v. Mo. Dep't of Corr.*, 278 S.W.3d 193, 195 (Mo. banc 2009).

**Analysis**

A person commits the offense of interfering with an arrest in violation of section 575.150.1 if that person:

> knows or reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or stop an individual or vehicle, and for the purpose of preventing the officer from effecting the arrest, stop or detention, he or she: . . . [i]nterferes with the arrest, stop or detention of another person by ***using*** or threatening the use of violence, physical force ***or physical interference***.

(Emphasis added).[2] The State alleged law enforcement officers Corporal and Trooper were making an arrest of Passenger; Milazzo knew or reasonably should have known the officers were making an arrest; and, for the purpose of preventing the officers from effecting that arrest, Milazzo interfered with Passenger's arrest by using physical interference. Milazzo argues failing to unlock the passenger-side door did not constitute physical interference. The only issue before this Court, therefore, is whether the record contains sufficient evidence that Milazzo used physical interference within the meaning of section 575.150.

This Court has not previously considered the meaning of the phrase "using . . . physical interference." Neither section 575.150, chapter 575, nor other generally applicable provisions of the criminal code define this phrase or any of the words therein. "In the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary." *Matthews v. Harley-Davidson*, 685 S.W.3d 360,

---

[2] All statutory references are to RSMo 2016.

369 (Mo. banc 2024) (internal quotations omitted). "When ascertaining the legislature's intent in statutory language, it commonly is understood that each word, clause, sentence, and section of a statute should be given meaning." *State v. Yount*, 642 S.W.3d 298, 300 (Mo. banc 2022) (internal quotations omitted). But each word in a statute must also be read in the context of the statute rather than in isolation. *Kehlenbrink v. Dir. of Revenue*, 577 S.W.3d 798, 800 (Mo. banc 2019). Ascertaining the legislature's intent in statutory language should not involve hypertechnical analysis "but instead should be reasonable, logical, and should give meaning to the statutes." *United Pharmacal Co. of Mo. v. Mo. Bd. of Pharmacy*, 208 S.W.3d 907, 912 (Mo. banc 2006) (internal quotations omitted).

The word "use" in the context of section 575.150 means "to carry out a purpose or action by means of" physical interference. *Use*, *Webster's Third New International Dictionary* (2002). "Physical" in the context of the statute means a "material" thing ("of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary"). *Physical*, *Webster's Third New International Dictionary* (2002). And "interference" in the context of the statute means "the act of meddling in or hampering an activity or process." *Interference*, *Webster's Third New International Dictionary* (2002).

The State alleged Milazzo used physical interference to impede Passenger's arrest by failing to unlock the passenger-side door of his vehicle despite Corporal's multiple requests. Milazzo argues this is insufficient evidence because the State's allegation "hinges on a passive omission" and failing to unlock the passenger-side door is "not an affirmative act of physical interference." The plain and ordinary meaning of the statute, however, does not require an affirmative act to effectuate physical interference. Rather, section 575.150

6

was violated if Milazzo allowed a material thing to carry out the purpose of meddling in or hampering law enforcement's ability to effectuate the arrest of Passenger.

Here, Milazzo physically interfered with the arrest because he carried out the purpose to meddle in or hamper the officers' ability to effectuate Passenger's arrest by not unlocking the passenger-side door and removing this material barrier between the officers and Passenger. The officers testified Corporal told the vehicle occupants that Passenger was under arrest because the officers could not issue the citation without Passenger's identity, and when Passenger refused to step out of the vehicle on his own, Corporal instructed Milazzo multiple times to unlock the door. A reasonable jury could find evidence that a defendant who repeatedly refused to comply with a law enforcement officer's orders to unlock a vehicle during an arrest is sufficient to show the use of physical interference under section 575.150.[3]

---

[3] Under the applicable standard of review, this Court's role as an appellate court is not to reweigh the evidence and question the jury's outcome. *See Chaney*, 967 S.W.2d at 52. Rather, the Court must accept "as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict," and ignore "all contrary evidences and inferences." *Gilmore*, 537 S.W.3d at 344. Milazzo's testimony that he was not told to unlock the door must be disregarded as contrary evidence, and this Court cannot reweigh his evidence about the difficulty of unlocking the door to arrive at a different outcome.

**Conclusion**

For these reasons, the circuit court did not err in entering judgment and sentence against Milazzo for interfering with Passenger's arrest. The circuit court's judgment is affirmed.

_____
W. Brent Powell, Judge

All concur.

8