**BUCKNER et al. v. DILLARD et al.**

No. 28537. March 14, 1939.

Rehearing Denied April 11, 1939.

Julian B. Fite and Bower Broaddus, for petitioners.

Anton Koch, for respondents.

HURST, J. This is an action to review an award of the State Industrial Commission. The claimant, Jack Dillard, was a coal miner and received an injury working in a coal mine, while in the employment of the Griffin & Sheppard Coal Company. There is no question about the injury or that the Griffin & Sheppard Coal Company is primarily liable therefor. But the company being insolvent, the question here is whether J. T. Buckner and the Buckner Patterson Coal Company, a partnership, can be held secondarily liable.

The record discloses the following facts: The mine in which Dillard was injured was owned by the Southwestern Coal & Oil Company, which was in receivership in 1925. In October of that year, the receivers leased the property of the company to Buckner in order that the mine might be

operated and the proceeds therefrom used to pay off certain receivers' certificates which were outstanding. Buckner was in the business of selling coal, but was not in the business of mining coal. He did not want to incur any personal liability in connection with the operation of the mine, so a clause was inserted in the lease that "the Lessee may assign this lease or sublet said premises to a corporation organized by himself and associates, but such assignment or subletting shall in no respect relieve the Lessee from the obligations thereof, or any of them." This lease was for a term of three years.

Thereupon, Buckner organized the Cameo-Blackstone Coal Company, and was a stockholder and secretary-treasurer thereof. The day after he received the lease from the receivers he assigned "all of his right, title and interest" in the lease, without reservation, to said company.

On May 17, 1926, a written contract was entered into between the Cameo-Blackstone Coal Company, on the one hand, and Peter Frew, George Frew, Frank Griffin, and J. W. Sheppard, on the other. By the terms of this contract, the four parties named were to operate the mine and receive from the Cameo-Blackstone Coal Company a specified sum per ton. The contract was signed for the Cameo-Blackstone Coal Company by Ernest Ingram, its president, and attested by J. T. Buckner, its secretary. The testimony shows that Buckner negotiated this contract, but that in so doing he was acting for the company of which he was an officer. The record shows that the four parties named in the contract operated the mine for about 18 months under the name of Blackstone Universal Coal Company, when two of them dropped out and operations were continued by Frank Griffin and J. W. Sheppard. They operated the mine as a partnership, calling themselves the Griffin & Sheppard Coal Company.

While these parties were operating the mine, there appears to have been an oral agreement whereby the Cameo-Blackstone Coal Company retained a certain part of the money paid for the coal produced and kept it in a separate fund to pay compensation claims of employees. This arrangement continued as long as the Griffin & Sheppard Coal Company operated the mine, and checks were issued to various employees by the Cameo-Blackstone Coal Company, signed by Buckner as treasurer, out of this fund. Claimant was paid a certain amount out of this fund, but it is now exhausted.

The three-year term of the original lease from the receivers to Buckner expired by its terms on October 2, 1928, so shortly before that time, upon application by the receivers, the court entered an order authorizing them to enter into an agreement with Buckner extending the lease for a period of five months. Buckner then executed an assignment of "all of his right, title and interest" in the extension of the lease to the Cameo-Blackstone Coal Company before the date of the expiration of the original lease. It appears that the Griffin & Sheppard Coal Company thereafter continued to operate the mine under the same arrangement and it was during this period of extension, on January 29, 1929, that Dillard sustained his injury.

On March 1, 1929, these leases expired and the Griffin & Sheppard Coal Company ceased their operation of the mine about that time.

Thereafter, on June 3, 1929, the receivers of the Southwestern Coal & Oil Company again leased the property, this time to the Crowe Coal Company, and that company subleased to J. T. Buckner and A. F. Patterson, a partnership, doing business as the Buckner Patterson Coal Company.

Thereafter, the Crowe Coal Company foreclosed on the property of the Southwestern Coal & Oil Company and were the purchasers at foreclosure sale. Claimant Dillard, who had filed his claim but had not yet received an award, filed a motion in the foreclosure suit to set aside the sale, but the motion was overruled.

Dillard then obtained an award on July 15, 1930, which was vacated by this court and another hearing was had and another award was entered in favor of Dillard on April 1, 1938.

The commission found that on January 29, 1929, Dillard was in the employment of the Griffin & Sheppard Coal Company, which was at that time operating the mine, "which was leased to said Griffin & Sheppard Coal Company by J. T. Buckner, an individual who had charge of, or acted as representative of respondents Cameo-Blackstone Coal Company, Blackstone Universal Coal Company, Consolidated Coal Sales Company."

The commission further found that the Griffin & Sheppard Coal Company "had failed to secure the payment of compensation to their employees as required by the Workmen's Compensation Law."

It was under these findings that Buckner, as an individual, was held secondarily liable.

The commission further found that "after the date of said injury to claimant, J. T. Buckner then organized an additional coal company known as the Buckner Patterson Coal Company, a partnership, who took over the Blackstone Mine No. 2, being the same property that this claimant was injured on, without making any provisions for taking care of claimant's claim for compensation and other claims pending against said property by other companies and partnerships organized by J. T. Buckner and operating said property heretofore."

It was under this finding that the Buckner Patterson Coal Company, a partnership, was held secondarily liable.

Buckner and the Buckner Patterson Coal Company are the petitioners in this court.

■ The first question is whether there was any competent evidence before the State Industrial Commission which would justify its finding that J. T. Buckner, as an individual, is secondarily liable. Buckner's liability, if any, must attach by virtue of section 13351, O. S. 1931 (85 Okla. St. Ann. sec. 11), upon the theory that he is the principal employer operating the mine through an independent contractor or subcontractor of the independent contractor and has failed to require such contractors to comply with the Workmen's Compensation Law.

However, if we acknowledge the Cameo-Blackstone Coal Company as a corporate entity, there can be no secondary liability on Buckner upon this theory. We may assume, without deciding, that the relation between the Cameo-Blackstone Coal Company and the Griffin & Sheppard Coal Company, which was operating the mine at the time of the injury and was the immediate employer of claimant, was that of employer and independent contractor. The finding that Buckner had charge of, or acted as representative for, the Cameo-Blackstone Coal Company would make the contract none the less the contract of the corporation, and not that of Buckner individually. Such finding merely places Buckner as the agent of the corporation. Therefore the question is whether the relations between Buckner, as lessee from the receivers of the Southwestern Coal & Oil Company, and the Cameo-Blackstone Coal Company are one of employer and independent contractor. The record shows that Buckner, by an instrument designated "assignment of mining lease," reciting a consideration of $1,000, sold, conveyed, and assigned "all of his right, title

and interest" in the lease to the Cameo-Blackstone Coal Company, as he was authorized to do in his lease from the receivers. He retained no reversionary interest. He exercised no control over the operation of the mine by the corporation. He was to receive no portion of the proceeds of the operation. The conveyance was simply a straight assignment. 35 C. J. 988; 16 R. C. L. 824; Leckie v. Dunbar (1936) 177 Okla. 355, 59 P.2d 275. Therefore, Buckner, after the assignment, no longer had any interest in the subject matter, nor is his relationship to the Cameo-Blackstone Coal Company in any sense one of employer and independent contractor. It follows that so long as we recognize the corporate entity of that company, he cannot be held secondarily liable by virtue of section 13351, supra.

The cases from other jurisdictions, as well as our own, relied on by claimant and dealing with the liability of a principal employer who procures work to be done through the medium of an independent contractor, are not in point here unless we can upon some reason say that Buckner is a principal employer.

We come then to a consideration of the only other theory upon which it could be asserted that Buckner is secondarily liable under the statute. That is, pierce the corporate veil of the Cameo-Blackstone Coal Company upon the ground that its incorporation by Buckner and his associates was merely a device or artifice to evade the Workmen's Compensation Law, then placing Buckner in the place of the corporation, he could with reason be said to be the principal employer procuring the operation of the mine by his independent contractor, the Griffin & Sheppard Coal Company. This is the theory most strongly urged by claimant, as we understand it.

As a general rule, a corporation is regarded as a legal entity, separate and distinct from the individuals who comprise it. Fletcher, Cyc. of the Law of Private Corps., vol. 1, sec. 25. However, there is a recognized exception to the general rule, that when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons. Fletcher, Cyc. Corps., vol. 1, sec. 41. Leading cases are United States v. Milwaukee Refrigerator Transit Co. (C. C. A., 1905) 142 F. 247; Majestic Co. v. Orpheum Circuit (C. C. A., 1927) 21 F.2d 720.

But here, there is no evidence to justify

the application of this theory. The only evidence in the record that claimant relies on is the statement by Buckner that he organized the corporation to avoid personal liability in connection with the operation of the mine, and the further fact that the court authorized the receivers to execute the extension to Buckner, rather than the corporation. But this is not sufficient to authorize the court to disregard the corporate entity. A recognized purpose of a corporation is to permit persons to avoid personal liability either entirely or beyond a statutory amount. Thompson, Commentaries on the Law of Private Corporations (2d Ed.) vol. 1, sec. 5. There is no evidence that Buckner or his associates sought to evade the Workmen's Compensation Law. In fact, the record shows that an arrangement was devised to take care of compensation claims, but it proved inadequate. There is no evidence of fraud or bad faith. The fact that the court authorized the receivers to execute the extension of the lease to Buckner signifies nothing in view of the fact that the original lease was executed to Buckner, and the extension agreement was made before the expiration of such lease. This extension was promptly assigned, and we fail to see where fraud or bad faith can be inferred from that circumstance.

Claimant argues that Buckner had an agreement with the receivers from whom he leased the property and with the attorney representing the coal miners who were operating the mine that he could organize the Cameo-Blackstone Coal Company and thereby avoid liability under the Workmen's Compensation Law. It is then pointed out that section 13371, O. S. 1931 (85 Okla. St. Ann. sec. 47), provides that "no agreement by an employee to waive his right to compensation under this act shall be valid," and Utility Coal Co. v. Rogez (1935) 170 Okla. 264, 39 P.2d 60. is relied on as being similar to the case at bar. However, as pointed out, there is nothing in the record to show an agreement with claimant or any other employee whereby the right to compensation is waived, and we fail to see where this contention can have any merit. In the Rogez Case, the operators of a coal mine entered into a contract with their employees to waive their right to compensation under a working arrangement which they set up as a partnership between themselves and the miners, and the facts there presented are not analogous to those before us in this proceeding.

Neither can we see any merit to claimant's reference to subdivision (d) of section 13377, O. S. 1931 (85 Okla. St. Ann. sec.

64), relating to indemnity contracts of an employer.

It therefore follows that there is no evidence, upon any theory, to support the decision of the Industrial Commission holding J. T. Buckner, as an individual, secondarily liable to claimant.

■ The next question is whether there is any competent evidence to support the finding that the Buckner Patterson Coal Company, a partnership, is secondarily liable. Claimant has not presented any argument or authority, either in his briefs or upon oral argument, to show the basis of the secondary liability of this partnership. It will be remembered that the partnership acquired a lease upon the premises from the Crowe Coal Company after the injury had occurred. There is no evidence that they assumed any personal liability. It may be that claimant has a lien on the premises under section 13373, O. S. 1931 (85 Okla. St. Ann. sec. 49), but that question is not now before us. We know of no theory upon which personal liability could be imposed upon the partnership under the record in this case. There being no evidence to support the findings and order of the Industrial Commission, the same must be vacated. Integrity Mut. Casualty Co. v. Garrett (1924) 100 Okla. 185, 229 P. 282.

The award of the Industrial Commission is vacated in so far as it imposes personal secondary liability on J. T. Buckner, as an individual, and the Buckner Patterson Coal Company.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, GIBSON, and DANNER, JJ., concur. RILEY, CORN, and DAVISON, JJ., absent.