STATE ex rel. OKLAHOMA EMPLOYMENT SEC. COM. v. TULSA FLOWER EXCHANGE et al.

SAME v. TINGER.

No. 30428. March 16, 1943.

*135 P. 2d 46.*

Mac Q. Williamson, Atty. Gen., Randell S. Cobb, Asst. Atty. Gen., and Peyton Ford and Bruton Wood, all of Oklahoma City, for plaintiff in error.

Hughey Baker, of Tulsa, for defendants in error.

GIBSON, V. C. J. The state appeals from a judgment for defendants rendered in two consolidated cases wherein the state sought to collect certain taxes allegedly due under the Oklahoma Employment Security Act (40 O. S. 1941, ch. 6).

The defendants, respectively, were Tulsa Flower Exchange, a corporation, and G. J. Tinger, an individual, doing business as Sand Springs Greenhouse. Each defendant was an "employing unit" within the meaning of the act. 40 O. S. 1941 § 229, (d). But neither employed as many as eight persons and was therefore not an "employer" subject to the tax within the meaning of the act, sec. 229 (e) (1).

Under said paragraph (1) an "employer" is defined as an employing unit which employs eight or more persons. The employing unit is not subject to the tax unless it employs eight or more persons. In other words, in order to become an employer within the act, the employer must employ eight or more.

As stated above, neither of the defendants employed as many as eight persons, and was therefore not an employer. However, it was charged that they were so interrelated in ownership and management that the two together became an employer within the meaning of the act, employing more than eight persons and therefore subject to the tax. The liability, the state alleges, arises by reason of paragraph (4), subdivision (e), said section 229, which reads as follows:

"Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforceable means or otherwise) directly by the same interest, or which owns or controls one or more other employing units (by legally enforceable means or otherwise), and which, if treated as a single unit with such other employing unit, would be an employer under paragraph (1) of this subsection; . . "

The facts which allegedly make the two defendants a single employer are that the defendant Tinger as an individual owns the Sand Springs Green House outright, and owns also 70 per cent of the capital stock of the Tulsa Flower Exchange, a corporation, and as such stockholder controls the corporation, which, it is said, makes the two defendants "controlled . . . directly by the same interest" within the meaning of said paragraph (4).

It is shown, however, that the two businesses are operated separately and are related in no way, except Tinger controls the one outright, and exercises indirect control of the other as majority stockholder. Tinger is said to be the "interest" which controls the two "employing units" "by legally enforceable means or otherwise."

According to said paragraph (4) the control of the separate units must be "direct control," or the immediate right to enforce the right to direct control, by the same "interest" in order for the combined units to constitute a single "employer" within the meaning of the statute.

The word "control" should be accorded its full and complete meaning with due regard to the general purpose for which it was used in the statute. The statute in no way limits its meaning. The word as there used should be held to mean full power and authority to manage and direct every act, and to

formulate every business policy, of the employment unit, without right of legal interference from anyone with respect to all lawful pursuits.

The owner or owners of the majority of the capital stock of a corporation can never have direct control of the corporation merely by reason of such ownership. Direct control is always in the board of directors. 18 O. S. 1941 § 104. The majority stockholders may name the board of directors and therby exercise a more or less indirect control. The board of directors can never be composed of less than three stockholders. § 104, supra. Therefore, it is a legal impossibility for a single individual ever to acquire direct control of a corporation as a business entity.

This should be sufficient answer to every argument advanced by the state in this particular case. Tinger, by virtue of his majority stock, held certain powerful advantages, and may have exercised certain influences over the other stockholders that would border on something akin to indirect control, but he could never exercise direct control of the corporation by any "legally enforceable means or otherwise." Personal influence was the only instrument at his command in dealing with the board of directors concerning control of the corporation. It was said, however, in Gaines v. Gaines Bros. Co., 176 Okla. 583, 56 P. 2d 863, 868, that "the law has always recognized the right of majority stockholders of a corporation to control its business and affairs." No authority for the statement was cited. And the statement itself was unfortunate, for our statute, supra, provides otherwise. The majority may exercise indirect control by naming the directors who actually control the corporation.

It might be said within some degree of reason that a separate business controlled directly by all individual members of the board of directors of a corporation could be grouped with the corporation to make a single employer within the meaning of the act. But, in view of likely constitutional infringement, that is very doubtful, unless there is a substantial unity of interest of the owners of both enterprises.

Such was the situation in Gibson Products Co. v. Murphy, 186 Okla. 714, 100 P. 2d 453, cited by the state. In that case the court said that the controversy was limited to the constitutionality of the act. The case is clearly distinguishable from the instant one. There, it was sought to group two corporations as a single employer. The corporations were controlled by the same directors who owned all the stock in both. The situation here is so clearly different in material aspects that we need not make further distinction.

In dealing with the act it should be borne in mind that a corporation is a legal entity separate and apart from its stockholders, individually or as a body. The board of directors controls its functions. The board operates as an entity and not as individuals, and where the members of the board as individuals control another business, the board and the individual members thereof should never be classified as the "same interest," operating the two separate businesses, under the affiliate or grouping clause of the act, unless the members of the board also own all the stock in the corporation. However, if the arrangement is designed to avoid the tax, another question would arise.

The rule stated in Benner-Coryell Lumber Co. v. Indiana Unemployment Compensation Board, 218 Ind. 20, 29 N. E. 2d 776, should be followed here. It reads as follows:

"The State Unemployment Compensation Law does not impose liability for excise taxes on corporation employing less than eight persons because owner of majority of its stock has like interest in another corporation similarly situated, and the law would be void if so construed."

In that case it was said that the status of the two businesses is unaffected by the fact that a majority of the stock may or may not be controlled by the

same interest; and the court further said:

"It seems impossible to justify the interpretation sought by the state, upon the theory that the holders of a majority of the stock have control thereof because it is within their power to dictate who the directors shall be."

The state in the present case cites certain decisions from other states in support of its argument. Cases cited involving local Unemployment Security Acts are Witherspoon Oil Co. v. State (Tex. Civ. App.) 156 S. W. 2d 579; State v. Kitsap County Bank (Wash.) 117 P. 2d 228; Florida Industrial Commission v. Gary-Lockhart Drug Co., 143 Fla. 293, 196 So. 845; Maine Unemployment Compensation Commission v. Androscoggin Junior, Inc., 137 Me. 154, 16 Atl. 2d 252; New Haven, etc., Supply Co. v. Danaher, 128 Conn. 213, 21 Atl. 2d 383; Kellogg v. Murphy (Mo.) 164 S. W. 2d 285. In each of those cases the statute under consideration grouped those employment units that were controlled "directly or indirectly" by the same interest, whereas, our own statute groups only those units controlled "directly" by the same interest. This circumstance alone clearly distinguishes those cases from the present one. Here there may have been indirect control, but there was no direct control.

In H. E. Butt Grocery Co. v. Sheppard, (Tex. Civ. App.) 137 S. W. 2d 823, cited by the state, the question involved was the grouping of chain store corporations for purposes of the chain store tax. It did not concern unemployment compensation, but a wholly dissimilar statute.

Natural Gas Pipeline Co. v. Slattery, 302 U. S. 300, 58 S. Ct. 199, 82 L. Ed. 276, relied on by the state, involved a statute relating to affiliate interests subject to the jurisdiction of the public service commission as a single unit or otherwise. The statute there provided a method of grouping wholly dissimilar to the statute here under consideration.

United States v. Whyel, 19 Fed. 2d 260, is also cited by the state. That case involved payment of income tax by affiliated corporations. It was held that the combined income of two corporations was taxable under the act where brothers held "substantially all the stock" of both corporations. That case is clearly not in point.

The statute here under consideration authorizes the collection of a tax from employers of a certain class. Since it is a tax statute, it should be construed with the taxpayer's interest uppermost in mind, and the courts will not enlarge upon its provisions to make them applicable in any case not clearly within the contemplation of the Legislature. Pure Oil Co. v. Cornish, 174 Okla. 615, 52 P. 2d 832.

The judgment is affirmed.

CORN, C. J., and RILEY, OSBORN, BAYLESS, WELCH, HURST, and DAVISON, JJ., concur. ARNOLD, J., absent.