2014 OK 34

**Clayton LOCKETT and Charles Warner, Appellants,**

**v.**

**Edward EVANS, in his official capacity as Interim Director of Corrections, and Oklahoma Department of Corrections, Appellee.**

**Nos. 112,741, 112,764.**

Supreme Court of Oklahoma.

April 23, 2014.

Rehearing Denied April 25, 2014.

PER CURIAM.

¶1 Pursuant to Rule 1.36, this Court granted expedited review of this case. The case arises from a declaratory judgment proceeding in the district court of Oklahoma County brought pursuant to 12 O.S.2011, §§ 1651–1657. The procedural history is set forth in this Court's per curiam memorandum opinion, *Lockett, et al. v. Evans,* 2014 OK 33, —— P.3d ——.

¶2 The gravity of this case calls for a statement of the basis and scope of jurisdiction exercised in this case by both the district court and this Court. The district court exercised its constitutional original jurisdiction under Article 7, § 7 of the Oklahoma Constitution as well as jurisdiction to grant declaratory relief conferred by 12 O.S.2011, §§ 1651–1657. One of the controversies cognizable under the declaratory judgment act is that "a statute or regulation is alleged to be unconstitutional." § 1653(C). The district court entered a declaratory judgment in this case declaring the confidentiality provisions in 22 O.S.2011, § 1015(B) unconstitutional. This determination has "the force and effect of a final judgment." § 1654.

¶3 This Court exercises its appellate jurisdiction to review the district court's declaratory judgment under our appellate jurisdiction over "all cases at law and equity"

given by Article 7, section 4 of the Oklahoma Constitution and under 12 O.S.2011, § 1654 which states declaratory judgments "shall be reviewable in the same manner as other judgments." *Id.* Both the condemned prisoners and the Attorney General on behalf of the Department of Corrections have appealed the judgment in question to this Court.

¶ 4 In addition to appellate review, the declaratory judgment act expressly provides "[f]urther relief based upon [the declaratory judgment] may be granted whenever such relief becomes necessary and proper after the [judgment] has been made." § 1655 (emphasis added). Such relief can be granted by "any court having jurisdiction." *Id.*

¶ 5 As concerns the scope of jurisdiction, neither the district court nor this Court has undertaken a review of the validity or terms of the judgments and sentences in the underlying criminal cases. *Easterwood v. Choctaw County District Attorney,* 2002 OK CIV APP 41, 45 P.3d 436.

¶ 6 In the face of the district court's declaratory judgment declaring the confidentiality provisions of 22 O.S.2011, § 1015(B) unconstitutional, the timing of the scheduled execution of condemned prisoner Lockett, and the need to review the extensive records and filings by the parties, this Court determined that the right of access to courts and the public interest required that the status quo be maintained pending completion of appellate review. The recent filings by the parties in this Court concerning a stay substantially satisfied the procedure prescribed in § 1655 for granting further relief that was necessary and proper. This stay, as set forth in this Court's per curiam opinion filed April 21, 2014, was such "further relief" that was "necessary and proper" under § 1655, and was likewise appropriate injunctive relief in aid of this Court's appellate jurisdiction authorized by Article 7, section 4 of the Oklahoma Constitution.

¶ 7 This Court construed 22 O.S. 1001.1 in deciding whether this Court or the Court of Criminal Appeals had jurisdiction to give this statutory remedy. In our second transfer order, we concluded the statute authorized the Court of Criminal Appeals to grant *this statutory remedy,* but in doing so

also said that three subsections in this statute (D, E and F) also recognize and accommodate "a stay of execution ... issued by any state or federal court." These subsections clearly indicate that the statutory stay remedy in this section is not exclusive. Our pronouncements in resolving jurisdictional conflicts with the Court of Criminal Appeals are final under Article 7, § 4 of the Oklahoma Constitution

¶ 8 We began appellate review of this case on March 11, 2014 with the filing of appeal 112,741 by the condemned prisoners. On April 18, 2014, the Attorney General filed appeal 112,764 on behalf of the Department of Corrections. As appeals governed by Rule 1.36, both parties submitted the record of the district court summary judgment proceedings without additional briefing for this Court's appellate review. In view of the gravity of this case, review of the record has been expedited, and has been completed in 43 days. In the interim, this Court also addressed three stay requests by the condemned prisoners and the Attorney General's petition for rehearing of the per curiam memorandum opinion, issued April 21, 2014.

¶ 9 We now address the merits of these appeals. For the reasons that follow, we affirm that portion of the district court's declaratory judgment that denied the condemned prisoner's relief and reverse the declaratory judgment declaring the confidentiality provisions of 22 O.S.2014, § 1015(B) unconstitutional.

## APPEAL BY THE DOC

¶ 10 The trial court in this matter held unconstitutional the entire secrecy provision found in section 1015(B) which provides: "The identity of all persons who participate in or administer the execution process and persons who supply the drugs, medical supplies or medical equipment for the execution shall be confidential and shall not be subject to discovery in any civil or criminal proceedings." By the time of that decision, the DOC had already disclosed its new execution protocol and the identity of the drug or drugs to be used in its choice of five different drug or drug combinations.

¶ 11 There was no need for the trial court to declare the secrecy provision unconstitutional in order for the condemned prisoners to discover the identity of the drug or drugs to be used in these inmates' executions. By its terms, the secrecy provision does not make the identity of the drug or drugs secret and any reliance on the provision to do so would be misplaced. The Oklahoma Legislature has expressed no policy that keeps the identity of the drug or drugs secret.

¶ 12 The challenged provision makes secret only the identity of the persons who carry out the execution and the identity of the persons who supply the drugs and medical equipment necessary to do so. The identity of the drug or drugs and the dosage of the drugs are not covered by the provision. At the same time, the provision makes the identity of the executioners and the drug and medical suppliers confidential. Properly understood, the provision protects the identity of certain persons, not the identity of the drug or drugs to be used in executions. Thus, the sole question in the DOC's appeal becomes whether the constitutional guarantee of access to the courts renders unconstitutional the secrecy of the source of the drug or drugs. In other words, does secrecy concerning disclosure of the source of the drug or drugs prevent inmates' access to the courts to pursue an Eighth Amendment claim?

¶ 13 To prevail on an "access to the courts" constitutional challenge, a litigant must demonstrate "actual injury—that is 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" *Lewis v. Casey*, 518 U.S. 343, 348, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The right of access to the courts does not include the right to discover a cause of action or to litigate effectively once in court. *Id.* at 354, 116 S.Ct. 2174.

¶ 14 The record indicates that the inmates have been provided with the identity of the drug or drugs to be used in the executions and with the dosages to be injected. The inmates have not demonstrated actual prejudice with respect to a contemplated Eighth amendment claim challenging their sentence. This Court holds that the secrecy provision of section 1015(B) does not violate the inmates' constitutional right of access to the courts.

## INMATES' APPEAL

¶ 15 The Administrative Procedures Act governs the delegation of rulemaking authority to executive agencies by the Oklahoma Legislature. 75 O.S. § 250.2.

> It was the intent, purpose and object of the Legislature, in enacting it, to provide a Uniform system of regulations concerning administrative procedures in and before, and judicial review of the actions of, all state boards, commissions, departments, authorities, bureaus and officers authorized by the Constitution or statutes to make 'rules' or to formulate 'orders' (as those terms are defined and used in the act) other than those specifically excepted, by the provisions of the act, from the operation thereof.

*Trask v. Johnson*, 1969 OK 57, ¶ 12, 452 P.2d 575.

¶ 16 Article I of the Administrative Procedures Act governs procedures and legal requirements for rulemaking. Title 75 O.S. § 250.1. The definition of "rule" within the context of the Administrative Procedures Act is found at 75 O.S. § 250.3(17), which provides:

> 17. "Rule" means any agency statement or group of related statements of general applicability and future effect that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of the agency. The term "rule" includes the amendment or revocation of an effective rule but does not include:
>
> a. the issuance, renewal, denial, suspension or revocation or other sanction of an individual specific license,
>
> b. the approval, disapproval or prescription of rates. For purposes of this subparagraph, the term "rates" shall not include fees or charges fixed by an agency for services provided by that agency including

but not limited to fees charged for licensing, permitting, inspections or publications,

c. statements and memoranda concerning only the internal management of an agency and not affecting private rights or procedures available to the public,

d. declaratory rulings issued pursuant to Section 307 of this title,

e. orders by an agency, or

f. press releases or "agency news releases", provided such releases are not for the purpose of interpreting, implementing or prescribing law or agency policy;

 ¶ 17 The Department of Corrections' execution protocol is not a rule within the meaning of the Administrative Procedures Act, because it falls under the umbrella of "statements and memoranda concerning only the internal management of an agency and not affecting private rights or procedures available to the public." *See Conner v. North Carolina Council of State*, 365 N.C. 242, 716 S.E.2d 836, 841–842 (2011); *Middleton v. Missouri Dept. of Corrections*, 278 S.W.3d 193, 195–196 (Mo.2009); *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 311–312 (Tenn.2005).

¶ 18 This interpretation is consistent with specific exemptions granted to the Department of Corrections from compliance with the Administrative Procedures Act by the Legislature. All agencies are required to comply with Article 1 of the Administrative Procedures Act except those specifically exempted in some way by 75 O.S. § 250.4. Title 75 O.S. § 250.4(10) specifically exempts the Department of Corrections from Article 1 for certain purposes. It provides:

10. The Department of Corrections, State Board of Corrections, county sheriffs and managers of city jails shall be exempt from Article I of the Administrative Procedures Act with respect to:

a. prescribing internal management procedures for the management of the state prisons, county jails and city jails and for the management, supervision and control of all incarcerated prisoners, and

b. prescribing internal management procedures for the management of the probation and parole unit of the Department of Corrections and for the supervision of probationers and parolees.

Title 75 O.S. § 250.4(10) (emphasis added).

Title 75 O.S. § 250.4(10) exempts the Department of Corrections from compliance with Article 1 of the Administrative Procedures Act for management procedures of prisons and jails as well as management of incarcerated prisoners, because these are internal matters.

 ¶ 19 Such an interpretation is consistent with other states that have considered this issue and recognized that "promulgation requirements of public notice, public hearing, attorney general approval, and filing with the state are simply not realistic requirements for implementing procedures that concern the intricacies and complexities of a prison environment." *Middleton*, 278 S.W.3d at 196 (quoting *Bredesen*, 181 S.W.3d at 312). Taken together, the provisions of 75 O.S. § 250.3(17) and 75 O.S. § 250.4(10) indicate that the Legislature did not intend the internal operating procedures of the Department of Corrections concerning inmates, including its execution protocol, to be subject to the rulemaking requirements of the Administrative Procedures Act.

## CONCLUSION

¶ 20 Today's opinion resolves the issues raised in consolidated appeals brought by the condemned inmates and by the DOC and its interim Director. The stay of execution entered by this Court on April 21, 2014, is hereby dissolved. Any petition for rehearing in this matter must be filed by 12:00 pm on Friday April 25, 2014.

**AFFIRMED IN PART; REVERSED IN PART; STAY DISSOLVED.**

COLBERT, C.J., REIF, V.C.J., KAUGER, WATT, EDMONDSON, COMBS and GURICH, JJ., concur.

WINCHESTER and TAYLOR (by separate writing), JJ., concur in result.

WINCHESTER, J., concurring in result.

I remain committed to my previous votes in this case. However, since the Supreme Court has determined to address the drug secrecy issue, I concur in result.

TAYLOR, J., concurring in result.

¶ 1 I agree with the result reached by the Court today on the merits of this appeal in that each and every claim of the plaintiffs is denied. I must express my concern for the sixth time with this Court exercising jurisdiction in this criminal matter and not transferring *all* the issues to the Court of Criminal Appeals. I warned this Court in my previous dissents against crossing the Rubicon and now that crossing has caused a quagmire. Had this Court transferred all issues in this appeal to the Court of Criminal Appeals as I previously advocated, the matter would have been resolved without this Court ignoring precedent and the Court of Criminal Appeals' role in our judicial system.

¶ 2 The time-honored policy of this Court has been that there should be no conflict between the jurisdiction of this Court and the jurisdiction of the Court of Criminal Appeals whenever conflict is avoidable. "The makers of our Constitution had this policy in mind and so indicated that this was their mind by using the term 'exclusive appellate jurisdiction in criminal cases' when they prescribed the jurisdiction to be given to the Criminal Court of Appeals." *Ex parte Meek,* 1933 OK 473, ¶ 8, 165 Okla. 80, 25 P.2d 54, 55.

¶ 3 We have long recognized that the grant of appellate jurisdiction to the Court of Criminal Appeals included matters relating to criminal law and to the construction of the criminal statutes of this state even upon constitutional questions, and generally we have refrained from exercising jurisdiction to address such issues. *Hinkle v. Kenny,* 1936 OK 582, ¶ 10, 178 Okla. 210, 62 P.2d 621, 622. We have also determined that the Declaratory Judgment Act created a civil proceeding and was not intended "to grant jurisdiction to district courts to grant declaratory judgments construing, or determining the validity of penal statutes in situations other than those wherein injunctive relief would have been appropriate prior to enactment of the statute." *Anderson v. Trimble,* 1974 OK 2, ¶ 15, 519 P.2d 1352, 1356.

¶ 4 The scarcity of conflict between this Court and the Court of Criminal Appeals "is a testament to both the clarity of jurisdictional boundaries between the two Courts and the constant willingness of the members of each Court to observe and comply with their jurisdictional restrictions." *Carder v. Court of Criminal Appeals,* 1978 OK 130, ¶ 1, 595 P.2d 416, 418. We should return to our time-honored policy.

¶ 5 I have previously urged that all issues in these cases be transferred to the Court of Criminal Appeals. Since the majority of this Court has declined to transfer the cases and has retained these cases on this Court's docket, I feel compelled to concur in the result reached today.

¶ 6 I must also express my opinion that the plaintiffs' Eight Amendment and access to the courts claims are frivolous and not grounded in the law. It is my view that from the very beginning this so called "civil" litigation has been frivolous and a complete waste of time and resources of the Supreme Court of Oklahoma. The plaintiffs have no more right to the information they requested than if they were being executed in the electric chair, they would have no right to know whether OG & E or PSO were providing the electricity; if they were being hanged, they would have no right to know whether it be by cotton or nylon rope; or if they were being executed by firing squad, they would have no right to know whether it be by Winchester or Remington ammunition. I hope that this case ends any thought of future journeys down this path that has led this Court to this day. It is also my hope that this Court never again crosses the Rubicon.