OSCN Found Document:KENKEL v. PARKER

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 KENKEL v. PARKER
2015 OK 81
Case Number: 109832
Decided: 11/24/2015
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 81, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

THOMAS C. KENKEL, M.D. and ROBERT GOLD, M.D., Plaintiffs/Appellees,
v.
JOSEPH PARKER a/k/a JOSEPH G. PARKER, Defendant/Appellant,
and
ROBERT BLANKENSHIP, M.D., CHRIS M. BOXWELL, M.D., WILLIAM BURNETT, M.D., JOHN CATTANEAO, M.D., ERIC ENGLES, M.D., MARSHA HOWERTON, M.D., FRANK FORE, M.D., BARBARA FRIES M.D., E. BRADLEY GARBER, M.D, ROBERT GARRETT, M.D., JOEY MANDUANO, D.O., WILLIAM SAWYER, M.D., VICKI BAKER, M.D., LANCE MILLER, M.D., Plaintiffs/Third Party Defendants/Intervenors.

CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION II

Honorable Rebecca Brett Nightingale, Trial Judge

¶0 Doctors Thomas Kenkel and Robert Gold, plaintiffs/appellees, were stockholders in Global Health Initiative, a business that filed for bankruptcy. The appellant, Joseph Parker, obtained default workers' compensation awards against the business for a work-related accident. The business had not purchased workers' compensation insurance, nor did it carry its own risk policy. Consequently, Parker filed the workers' compensation awards in the district court of Tulsa County to obtain certified judgments against both the business and its shareholders in an attempt to collect his workers' compensation awards. The doctors filed a motion for summary judgement, seeking a declaration that, as mere shareholders, they could not be held personally liable for Parker's workers' compensation award. The trial court agreed and sustained the doctors' motion for summary judgment. Parker appealed and the Court of Civil Appeals reversed the trial court and remanded the cause with directions for the trial court to enter judgment in the appellant's favor. We granted certiorari to address the issue of whether a business' failure to secure workers' compensation insurance renders its shareholders personally liable for a workers' compensation award to an employee. We hold that it does not.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT AFFIRMED.

John E. Howland, Frederick J. Hengenbart, Tulsa, Oklahoma, for Petitioners/Appellees.
Brian J. Rayment, Tulsa, Oklahoma, for Defendant/Appellant.

KAUGER, J. 

¶1 The issue presented is whether shareholders, uninvolved in the management of a bankrupt corporation which was without workers' compensation insurance, may be held personally liable for a workers' compensation court award to an employee. We hold that, under such circumstances, shareholders cannot be held personally liable for the payment of the employee's workers' compensation award.

ALLEGED FACTS AND PROCEDURAL HISTORY

¶2 This cause concerns a litany of litigation and pleadings lasting over 15 years between the defendant/appellant, Joseph Parker (Parker/employee) and a bankrupt business named Global Health Initiative (GHI) which at one time employed Parker. Cardiology Digital Education (CDE), the apparent precursor entity to GHI, was an Oklahoma limited liability company, established in 1998, to provide materials for continuing medical education. CDE shut down and GHI replaced it sometime in 2000. The assets of CDE were transferred to GHI. GHI issued shares in GHI to the former shareholders of CDE. Additional shares in GHI were available for purchase.[1] The chairman of the board and president of GHI was Amjad Iqubal, M.D. There were three additional officers.[2] None of these individuals are parties to this cause.

¶3 On December 11, 2000, Parker was allegedly injured on the job. It is undisputed that GHI did not have workers' compensation insurance. On February 9, 2001, Parker filed a workers' compensation claim in the Workers' Compensation Court. On November 12, 2002, it awarded the employee, by default judgment against GHI, $17,595.60 plus interest. On November 22, 2002, Parker filed the judgment in the district court of Tulsa County in an attempt to collect the money awarded by the Workers' Compensation Court.

¶4 On March 7, 2003, after futile efforts to garnish the GHI bank accounts, Parker filed a motion in the district court of Tulsa County to pierce the corporate veil and to proceed against individual GHI shareholders in an attempt to collect his compensation awards. The trial judge denied Parker's request due to lack of evidence. On May 22, 2003, GHI filed notice of bankruptcy. By August of 2004, Parker had filed an appeal in the Tulsa County case that culminated in an unpublished opinion in case no. 101,038, Parker v. Global Health Initiative, (Parker 1) in which the Court of Civil Appeals, on March 16, 2007, reversed the trial court's determination that stockholders could not be held liable for the workers' compensation award and remanded the cause to the trial court. GHI did not defend or participate in the case on appeal.

¶5 Subsequently, according to Parker, he did not pursue collection against individual shareholders but, instead, returned to the Workers' Compensation Court on June 19, 2008, seeking permanent partial and permanent total awards and an increase in his original award. GHI was not served notice of this proceeding and the cause was consequently undefended. On February 20, 2009, the Workers' Compensation Court entered another award in favor of Parker and against GHI totaling $236,476.20. In June of 2009, Parker, through his counsel, sent letters to some of the GHI shareholders, seeking collection of the shareholders' pro rata share for payment of workers' compensation awards. However, for unexplained reasons, not all shareholders were asked to pay "their portion" of the judgment.[3]

¶6 Meanwhile, the GHI stockholders filed a declaratory judgment action in Tulsa County against Parker on April 21, 2010, in case no. CV-2010-468 asserting that the employee could not pierce the corporate veil and hold them personally liable for the GHI's workers' compensation debt. After Parker 1 was remanded to the trial court, it was consolidated with the GHI stockholders' case on April 13, 2011.

¶7 The plaintiffs/appellants, doctors Thomas Kenkel and Robert Gold (doctors/stockholders) were two of the doctor stockholders, and they brought this appeal. In the trial court, the doctors specifically sought a declaration that: 1) Parker had no valid judgement against them; 2) Parker was not entitled to proceed against them for the injuries he sustained; 3) Parker was not entitled to collect the workers' compensation judgment; 4) they have the right to defend against any of Parker's claims ab initio; 5) they are not shareholders of GHI at all but if they were, they were merely minority shareholders; and 6) they are not liable for the debts Parker is attempting to collect. According to exhibits filed by Parker,[4] there were 4,072,800 shares issued in the CDE and GHI companies. Of the seventeen plaintiff/appellees who have their shares listed in Parker's affidavit, (not all are listed), the shares held by the individuals ranged from forty thousand to one-hundred eighty thousand. [5] The doctors were apparently minority shareholders of GHI. The record does not show that they had any involvement in the administration of GHI whatsoever.

¶8 The doctors filed a motion for summary judgment and the employee filed a cross-petition for summary judgment. After a July 7, 2011, hearing, the trial court granted the doctors' motion for summary judgment, finding that they were entitled to judgment in their favor on the petition for declaratory judgment and on Parker's counterclaim. In an order filed August 19, 2011, it held that the corporate veil could not be pierced against stockholders to render them personally liable for workers' compensation awards. The trial court entered a judgment for all of the doctors' claims.[6]

¶9 The employee appealed and on September 24, 2014, the Court of Civil Appeals reversed the trial court. The matter was remanded to the trial court with directions to enter judgment in Parker's favor, declaring that he may proceed to collect his certified judgments against GHI shareholders. We granted certiorari on January 13, 2015.[7] Subsequently, over the employee's objection, we allowed the remaining stockholders to intervene.[8] On July 16, 2015, intervenors John Cattaneao, Eric Engles, Marsha Howerton, Barbara Fries, William Sawyer, and Joey Manduano requested to be dismissed as intervenors from the appeal with prejudice because they had entered into a settlement agreement with the employee. We grant that request herein.

¶10 STOCKHOLDERS ARE NOT INDIVIDUALLY LIABLE WHEN A COMPANY NEGLECTS TO SECURE WORKERS' COMPENSATION INSURANCE COVERAGE.

¶11 The employee contends that public policy behind mandating workers' compensation insurance coverage requires corporate entities to be disregarded and stockholders held to be the responsible parties when a company neglects to secure workers' compensation coverage. Regardless of whether there is one shareholder, five shareholders, or 5,000 shareholders, the corporate veil should be pierced without regard to any culpability, or fraud under such circumstances. The doctors argue that stockholders should not be held liable for the recovery of workers' compensation benefits against a company, especially when such stockholders are minority stockholders and are neither officers, directors, employees, nor involved in the management or operation of the corporation.

¶12 A corporation is an artificial person,[9] a creature of statutory law.[10] The Oklahoma General Corporations Act, 18 O.S. 2011 ¶¶1001 et seq., sets forth the creation of corporations in Oklahoma and the law regarding them. There is a long legal history of a separation between a corporation and its shareholders. A basic tenet of American corporate law is that the corporation and its shareholders are distinct, separate entities.[11] Ignoring this distinction is known as "piercing the corporate veil,"[12] and the distinction is not ignored, unless it can be shown that there is a design or scheme to perpetrate a fraud or defeat public convenience, justify wrong, or defend crime.[13]

¶13 Nearly 80 years ago, in Buckner v. Dillard, 1939 OK 144, ¶0, 88 P.2d 326, the Court clearly explained that one of the recognized purposes of incorporation is to permit persons to avoid personal liability, either entirely or beyond a statutory amount. Buckner involved a coal minor who was injured and who obtained a workers' compensation award for his injuries against an insolvent company. The company had not secured workers' compensation insurance (at that time it was known as Workmen's Compensation). Various incarnations of partnerships and agreements were involved in the coal mine operation, and liability was sought against Buckner, who was an officer and stock-holder in the partnerships involved. The Court held that Buckner could not be individually liable for the compensation award because there was no evidence that the various companies involved were created as a device or artifice to evade the workers' compensation laws.

¶14 Since Buckner, was decided, both corporate law and workers' compensation laws have gone through many incarnations. Nevertheless, the rules of law governing whether a corporate veil may be pierced and the public policy behind the workers' compensation regulatory scheme have not changed. Recently, in Evans & Associates Utility Services v. Espinosa , 2011 OK 81, ¶14, 264 P.3d 1190, the Court explained the purposes behind workers' compensation law, noting that:

The Workers Compensation Act was designed to provide compensation to covered workers for loss of earning capacity, incurred as a result of work-related accidents. It is a mutual compromise in which the employee relinquishes his/her right to sue for damages sustained in job-related injuries; and the employer accepts no-fault liability for a statutorily prescribed measure of damages. However, in exchange for the employer's greater and more certain exposure, the Act also provides the employer with certain advantages. It offered the employer a maximum loss and protected employers from excessive judgments. The object of the Act is to compensate, within the limits of the act, for loss of earning power and disability to work occasioned by injuries to the body in the performance of ordinary labor. (Citations omitted).

¶15 Workers' Compensation is also a creature of statute, and it does not operate outside the limits designed by the Legislature.[14] It is the exclusive remedy for work related accidents sustained during the course and scope of a worker's employment.[15] Nevertheless, we find nothing in either the workers' compensation statutes nor the corporate law statutes which indicates that the Legislature intended to trump corporate shareholder liability laws when it provided for a mutual compromise between an employee's right to sue for damages sustained in job-related injuries and an employer's statutorily prescribed liability. To the contrary, statutory limits of liability for the shareholders of dissolved Oklahoma Corporations are expressly set forth in 18 O.S. 2011 §1100.3 which provides that a shareholder liability for claims against a dissolved corporation cannot be greater than the shareholder's pro rata share of the corporation or the amount distributed to the shareholder -- whichever is less.[16] Here, GHI was insolvent and bankrupt. There is no evidence presented which would suggest that anything was distributed among shareholders after its dissolution.

¶16 This Court has permitted the piercing of the corporate veil to uphold public policy in limited circumstances.[17] We have also declined to permit such piercing if there was no evidence that the establishment of such a corporate entity was done solely to avoid the payment of worker's compensation claims.[18] Nor do we permit such a piercing today. There is no evidence that the corporation was established to avoid workers' compensation claims. It is arguable that there was a corporate history of gross mismanagement, as evidenced by its bankruptcy, but the evidence before the trial court would indicate that the decision not to have valid workers' compensation insurance did not rest in the hands of the shareholders who are parties to this action.

¶17 To argue that they are liable because public policy must make someone liable is an argument not well taken. If the corporate veil were pierced under these facts, we would effectively be erasing the doctrine altogether. If the Legislature chooses to expose shareholders to such liability, it may do so. Until then, we hold that shareholders cannot generally be held personally liable for the payment of the employee's workers' compensation award.

¶18 We recognize that the Court of Civil Appeals reached a different conclusion in Thomas v. Vertigo, Inc., 1995 OK CIV APP 45, 900 P.2d 458, cert. denied, July 13, 1995, when it held that the corporate veil could be pierced for public policy reasons because an employee was injured in the course of her work at a restaurant and the corporate entity that owned the restaurant did not maintain worker's compensation insurance. It is vital to note that, in Thomas, all corporate stock was owned by one individual. The same individual served as the director and president of the corporation that owned the restaurant. The person who was held personally liable was the person who made the decision not have a valid own risk permit or to carry worker's compensation insurance. Because Thomas differs factually from this cause, we need not overrule it today. However, to the extent that the unpublished opinion in case no. 101,038, Parker v. Global Health Initiative, (Parker 1) is inconsistent with today's pronouncement, it is hereby expressly overruled.

CONCLUSION

¶19 Both corporations and workers'compensation are creatures of statutes.[19] Corporations were specifically designed to separate a corporation from its shareholders, including liability.[20] Unless it can be shown that there is a design or scheme to perpetrate a fraud or defeat public convenience, justify wrong, or defend crime, the distinction is not ignored. [21] Workers' Compensation was designed as a mutual compromise to provide compensation to covered workers for loss of earning capacity incurred as a result of work-related accidents, while relinquishing the right to sue and an employer accepting statutorily prescribed no-fault liability for a measure of damages.[22] Nowhere under either statutory scheme, has the Legislature chosen to eradicate the reasons for piercing the corporate veil to expose stockholders liable for a company's failure to secure workers' compensation coverage. We decline to do so today.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT AFFIRMED.

COMBS, V.C.J.,(separate writing), KAUGER, WATT, WINCHESTER, EDMONDSON, TAYLOR, JJ., concur.

COLBERT, J., concurs in result.

REIF, C.J., (separate writing) and GURICH, J., dissent.

FOOTNOTES

[1] Affidavit of Joseph G. Parker, filed in case number CV-2010-468, District Court of Tulsa County on November 30, 2010.

[2] Appellee's Supplement to Record on Accelerated Appeal, filed September 20, 2011, page 2.

[3] Answer, Cross Petition and Third Party Petition of Joseph G. Parker filed in case number CV-2010-468, District Court of Tulsa County on June 2, 2010, at page 3.

[4] The actual corporate records are not included in the record. According to Parker, the corporate minute book of GHI, its stock ledger, and other corporate records were held by an attorney. In May of 2003, these records were delivered to Amjad Iqubal. Parker's response to Plaintiff's Motion for Summary Judgment and Counter Motion for Summary Judgement, filed in Case Number CV-2010-00468, District Court of Tulsa County on November 30, 2010, at pages 8-9. GHI/Iqubal filed for chapter 7 bankruptcy in May of 2003, and Iqubal subsequently moved from Oklahoma to Ohio.

[5] Defendant's Exhibit 1, filed with the Affidavit of Joseph G. Parker, filed in case number CV-2010-468, District Court of Tulsa County on November 30, 2010. November 30, 2010.

[6] Title 12 O.S. 2011 § 994 (A) provides pertinent part:

A. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the preparation and filing of a final judgment, decree, or final order as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the filing of a final judgment, decree, or final order. . . .

[7] Appellate jurisdiction to review the district court's declaratory judgment is under art. 7, §4 of the Okla. Const. and pursuant to 12 O.S. 2011 §1654 which states declaratory judgments "shall be reviewable in the same manner as other judgments." Lockett v. Evans, 2014 OK 34, ¶3, 330 P.3d 488. Summary judgment is a pretrial procedure available where there is no dispute as to the material facts and the inferences that may be drawn from the undisputed material facts and where the evidentiary materials establish each and every material fact necessary to support the judgment as a matter of law. Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶11, 160 P.3d 959, 963. We review a summary judgment de novo, without deference to the lower court. State ex rel. Pruitt v. Native Wholesale Supply, 2014 OK 49, ¶12, 338 P.3d 613.

[8] This Court granted the Petition to Intervene of sixteen additional plaintiffs and third party defendants on April 4, 2015, and the employee filed a response and an objection on April 7, 2015.

[9] East Central Oklahoma Elec. Co-op, Inc. v. Oklahoma Gas & Elec. Co., 1973 OK 3, ¶13, 505 P.2d 1324.

[10] Sneed v. Tippett, 1925 OK 336, ¶12, 245 P. 40.

[11] Fanning v. Brown, 2004 OK 7, ¶16, 85 P.3d 841 Sautbine v. Keller, 1966 OK 209, ¶0, 423 P.2d 447 [Even a family corporation is separate and distinct from its shareholders.]; State ex rel. Okla. Employment Sec. Com'n v. Tulsa Flower Exchange, 1943 OK 109, ¶13, 89 P.2d 326. Dole Food Co. v. Patrickson, 538 U.S. 468, 474-75, 123 S. Ct. 1655, 1660, 155 L. Ed. 2d 643 (2003) [A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities.] First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 625, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983) [Separate legal personality has been described as 'an almost indispensable aspect of the public corporation.']; Burnet v. Clark, 287 U.S. 410, 415, 53 S.Ct. 207, 77 L.Ed. 397 (1932) [A corporation and its stockholders are generally to be treated as separate entities.]. An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets and, as a result, does not own subsidiary corporations in which the corporation holds an interest. See 1 W. Fletcher, Cyc. of the Law of Private Corporations 31 (rev. ed.1999).

[12] Carter v. Schuster, 2009 OK 94, ¶17, 227 P.3d 149; Seitsinger v. Dockum Pontiac Inc., 1995 OK 29, ¶10, 894 P.2d 1077; Hulme v. Springfield Life Ins. Co., 1977 OK 108, ¶15, 565 P.2d 666.

[13] Fanning v. Brown, see note 11, supra; Mid-Continent Life Ins. Co. v. Goforth, 1943 OK 244, ¶ 10, 143 P.2d 154, 156. [Courts may disregard the corporate entity and hold stockholders personally liable for corporate obligations or corporate conduct under the legal doctrines of fraud, alter ego, and when necessary to protect the rights of third persons, and accomplish justice.]; Buckner v. Dillard, 1939 OK 144, ¶ 21, 89 P.2d 326, 328. [The notion of a corporation's legal entity, apart from the persons composing it, is introduced for convenience and to serve the ends of justice.].

[14] In the Matter of the Death of Hyde, 2011 OK 31, ¶9, 255 P.3d 411.

[15] Price v. Howard, 2010 OK 26, ¶8, 236 P.3d 82.

[16] Title 12 O.S.2011 § 1100.3 states:

A. A shareholder of a dissolved corporation the assets of which were distributed pursuant to subsection A or B of Section 1100.2 of this title shall not be liable for any claim against the corporation in an amount in excess of the shareholder's pro rata share of the claim or the amount so distributed to the shareholder, whichever is less. ...

C. The aggregate liability of any shareholder of a dissolved corporation for claims against the dissolved corporation shall not exceed the amount distributed to the shareholder in dissolution

[17] Mid-Continent Life Ins. Co. v. Goforth, 1943 OK 244, 143 P.2d 154.

[18] Buckner v. Dillard, 1939 OK 144, ¶0, 88 P.2d 326,

[19] Sneed v. Tippett, see note 10, supra; In the Matter of the Death of Hyde, see note 14, supra.

[20] Fanning v. Brown, see note 11, supra; Sautbine v. Keller, see note 11, supra; State ex rel. Okla. Employment Sec. Com'n v. Tulsa Flower Exchange, see note 11, supra.

[21] Fanning v. Brown, see note 11, supra; Mid-Continent Life Ins. Co. v. Goforth, see note 13, supra; Buckner v. Dillard, see note 13, supra.

[22] Evans & Associates Utility Services v. Espinosa, 2011 OK 81, ¶14, 264 P.3d 1190.

 

 

COMBS, V.C.J., concurring specially: 

¶1 I concur with the majority's interpretation of the law, and consequently the result in this cause. However, I write separately to emphasize the injustice created when a worker is injured in the course of their employment and although a remedy exists, recovery of a judgment and compensation for his loss do not exist because of the employer's noncompliance with the requirements of the Workers' Compensation system to have workers' compensation coverage which would benefit an injured worker. 

¶2 The terms of the often-mentioned Grand Bargain provided that in exchange for relinquishing the ability to sue for damages stemming from work-related injuries, employers would accept no-fault liability and workers would be provided compensation for loss of earning capacity as a result of work-related accidents. See Evans & Associates Utility Services v. Espinosa, 2011 OK 81, ¶14, 264 P.3d 1190. As the majority correctly states, Workers' Compensation is the exclusive remedy for work related accidents sustained during the course and scope of a worker's employment. Price v. Howard, 2010 OK 26, ¶8, 236 P.3d 82.

¶3 The right to a remedy for recognized wrongs is a core principle of Oklahoma law. Okla. Const., Art. 2, § 6 provides:

[t]he courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

This Court has previously recognized that Okla. Const., Art. 2, § 6 does not promise a remedy for every complaint. Zeir v. Zimmer, Inc., 2006 OK 98, ¶31, 152 P.3d 861; St. Paul Fire & Marine Ins. Co. v. Getty Oil Co., 1989 OK 139, ¶16, 782 P.2d 915.[1] However, Okla. Const., Art. 2, § 6 does require that complainants must be given access to the courts if they have suffered wrongs recognized in the law, functioning essentially to protect access to a remedy for violations of substantive rights which have vested. See Getty Oil Co., 1989 OK 139, ¶16.

¶4 Joseph Parker now finds himself in a position where he has suffered a wrong recognized by the Legislature. He has a vested statutory right to a remedy under the Workers' Compensation statutes, a right affirmed by the courts. However, because the law does not contemplate piercing the corporate veil in cases where an insolvent or dissolved employer corporation failed to comply with the provisions of the Workers' Compensation statutes, Joseph Parker has a remedy but no recovery. This result, though compelled by the long-standing law of corporations, defies the spirit of the Grand Bargain and the principle that there should always be an accessible remedy for legally-recognized wrongs.

FOOTNOTES

[1] "This Court has unequivocally stated that 'it is within the power of the Legislature to modify or abolish an old right under common law as long as no vested right is disturbed.'" Getty Oil Co., 1989 OK 139, ¶14 (quoting Loyal Order of Moose, Lodge 1785 v. Cavaness, 1977 OK 70, ¶8, 563 P.2d 143).

 

 

REIF, C.J., dissenting, with whom Gurich, J., joins.

¶1 The issue in this case is whether a corporate stockholder can incur secondary liability for a workers' compensation award where the corporation failed to provide insurance and has no assets from which to pay the award. The majority holds that the general rule of limited liability shields stockholders from liability for such an award "[u]nless it can be shown that there is a design or scheme to perpetrate a fraud or defeat public convenience, justify wrong, or defend crime." ¶ 19, Majority Opinion.

¶2 The 1939 case of Buckner v. Dillard, 1939 OK 144, 89 P.2d 326, similarly construed the scope of limited liability to relieve a stockholder from secondary liability for a workers' compensation award; the second syllabus of the opinion declared: "the mere fact that a corporation is organized for the express purpose of avoiding personal liability . . . is not sufficient reason for piercing the corporate veil in order to impose secondary liability under the Workmen's Compensation Law on a stockholder, in the absence of fraud or device to evade the Workmen's Compensation Law." The Buckner opinion stated that this construction was based on "leading" federal case law. Id. at ¶ 21, 89 P.2d at 329.

¶3 My chief disagreement with the majority's adherence to the rule in Buckner lies in the fact that both federal case law and this Court have embraced a broader rule for piercing the corporate veil, since Buckner was decided. The United States Supreme Court has said that the corporate veil may be disregarded when "essential to the end that some accepted public policy may be defended or upheld." Anderson v. Abbott, 321 U.S. 349, 362 (1944). The Court has also said the corporate form may be disregarded "in the interest of justice where it is used to defeat an overriding public policy." Bangor Punta Operations, Inc. v. Bangor & Aroostook Ry Co., 417 U.S. 703, 713 (1974).

¶4 In the case of Sautbine v. Keller, 1966 OK 209, ¶ 15, 423 P.2d 447, 451, this Court noted that the "doctrine [of piercing the corporate veil] has been amplified to allow application not only for fraud or wrong, but also in cases where the facts require the court to disregard the separate existence of the corporation and the shareholders in order to protect the rights of third persons and accomplish justice." This Court has further observed that the corporate veil is simply "a legal theory introduced for the purpose of convenience and to subserve the ends of justice [and can not be] invoked in support of an end subversive of said policy[.]" Mid-Continent Life Ins. Co. v. Goforth, 1943 OK 244, ¶ 10, 143 P.2d 154, 157.

¶5 Since 1995, published case law in this State has recognized that secondary liability for a workers' compensation award is properly extended to stockholders of an uninsured, defunct corporation in order to (1) uphold the public policy embodied in the Workers' Compensation Act, (2) protect the rights of innocent third persons (injured workers) and (3) serve the interests of justice. Thomas v. Vertigo, Inc., 1995 OK CIV APP 45, 900 P.2d 458 (cert. denied). Even though this Court is not bound to follow this pronouncement of law by the Court of Civil Appeals, the Thomas case is due great weight. Such weight derives from the fact that the Legislature has amended or revised the Workers' Compensation Act every year since 1995, and has never abrogated this interpretation of Workers' Compensation public policy nor its effect on stockholder liability.

¶6 "Legislative familiarity with extant judicial construction of statutes in the process of being amended is presumed." Lekan v. P & L Fire Protection Co., 1980 OK 56, ¶ 5, 609 P.2d 1289, 1292. "Where a judicial construction has been placed upon the language of a statute for a long period of time, so that there has been abundant opportunity for the lawmaking power to give further expression of its will, its failure to do so amounts to a legislative approval and ratification of the construction placed upon the statute by the courts." McCain v. State Elec. Bd., 1930 OK 323, ¶ 0, 289 P. 759 (Syllabus 2).

¶7 In reaching the conclusion that secondary liability was properly enforced against the stockholders in question, I share the majority's concern that the public policy basis for piercing the corporate veil should not be automatic nor be given overly broad effect. While every statute represents an expression of public policy on a particular subject, before such particularized public policy is found to justify piercing the corporate veil, a thorough analysis and balancing of interests (such as done in the Thomas case) must support the recognition of any new exception to limited liability. In this regard, it is important to stress that all three of the modern or "amplified" elements for piercing the corporate veil were present in Thomas - public policy, protection of an innocent third party and furtherance of the interests of justice.

¶8 For the foregoing reasons, I respectfully dissent.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1995 OK CIV APP 45, 900 P.2d 458, 66 OBJ 2587, Thomas v. Vertigo, Inc.
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 139, 782 P.2d 915, 60 OBJ 2835, St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.
Discussed at Length
 1939 OK 144, 89 P.2d 326, 184 Okla. 586, BUCKNER v. DILLARD
Discussed at Length
 1966 OK 209, 423 P.2d 447, SAUTBINE v. KELLER
Discussed at Length
 1995 OK 29, 894 P.2d 1077, 66 OBJ 1120, Seitsinger v. Dockum Pontiac Inc.
Discussed
 1973 OK 3, 505 P.2d 1324, EAST CENT. OKL. ELEC. COOP. v. OKLAHOMA G. & E.
Discussed
 2004 OK 7, 85 P.3d 841, FANNING v. BROWN
Discussed
 1930 OK 323, 289 P. 759, 144 Okla. 85, McCAIN v. STATE ELECTION BD.
Discussed
 2006 OK 98, 152 P.3d 861, ZEIER v. ZIMMER, INC.
Discussed
 2007 OK 38, 160 P.3d 959, LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed
 2009 OK 94, 227 P.3d 149, CARTER v. SCHUSTER
Discussed
 2010 OK 26, 236 P.3d 82, PRICE v. HOWARD
Discussed at Length
 2011 OK 31, 255 P.3d 411, IN THE MATTER OF THE DEATH OF HYDE
Discussed
 2011 OK 81, 264 P.3d 1190, EVANS & ASSOC. UTILITY SERVICES v. ESPINOSA
Discussed at Length
 1925 OK 336, 245 P. 40, 114 Okla. 173, SNEED v. TIPPETT
Discussed
 2014 OK 34, LOCKETT v. EVANS
Cited
 2014 OK 49, 338 P.3d 613, STATE ex rel. PRUITT v. NATIVE WHOLESALE SUPPLY
Discussed
 1977 OK 70, 563 P.2d 143, LOYAL ORDER OF MOOSE, LODGE 1785 v. CAVANESS
Discussed
 1980 OK 56, 609 P.2d 1289, Lekan v. P & L Fire Protection Co.
Discussed
 1977 OK 108, 565 P.2d 666, HULME v. SPRINGFIELD LIFE INS. CO.
Discussed
 1943 OK 109, 135 P.2d 46, 192 Okla. 293, STATE ex rel. OKLAHOMA EMPL. SEC. COM. v. TULSA FLOWER EXCH.
Cited
 1943 OK 244, 143 P.2d 154, 193 Okla. 314, MID-CONTINENT LIFE INS. CO. v. GOFORTH
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 994, Procedure When There is More Than One Claim or Party - Final Judgment
Cited
 12 O.S. 1654, Determination to Have Effect of Final Judgment - Reviewable as Other Judgments
Cited
Title 18. Corporations
 Cite
Name
Level

 18 O.S. 1100.3, Liability of Shareholders of Dissolved Corporations
Cited